YOAKUM COUNTY ET AL V. GAINES COUNTY.

No. 7894. Decided June 17, 1942.
Rehearing overruled July 15, 1942.
(163 S. W., 2d Series, 393.)

*Nelson & Brown* and *Geo. W. McCleskey,* all of Lubbock, for Yoakum County, and *Burton G. Hackney* and *Joe J. McGowan,* both of Brownfield, and *E. L. Klett,* of Lubbock, for Terry County, plaintiffs in error.

It was error for the Court of Civil Appeals to hold that the respective counties were without authority to enter the order establishing the boundary line by mutual agreement and directing the surveyor to mark the same according to said agreement, and that said order was without force or effect. Williams v. Castleman, 247 S. W. 263; Williamson County v. Travis County, 15 S. W. (2d) 577; 11 Tex. Jur. 566.

*Bradley & Wilson,* of Lubbock, *Pat Beene,* of Andrews, *W. A. Griffis, Jr.,* of Seagraves and *Alton T. Freeman,* of Seminole, for defendant in error, Gaines County.

The petition presented a question of fact as to whether the Wood's line had been surveyed and established according to law, and it was error for the trial court to sustain the general demurrer to plaintiff's petition, and it was not error for the Court of Civil Appeals to reverse that action. Jones v. Powers, 65 Texas 207; Hale County v. Lubbock County, 194 S. W. 678; Texas Constitution Article 9, section 3.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is an action by Gaines County against Yoakum and Terry counties, to set aside a boundary line surveyed by A. L. Harris in 1935, and agreed to by each of the counties, acting through its commissioners court and its county court, and to substitute therefor a line surveyed in 1900 by Col. D. S. Woods. The trial court sustained the general demurrers of the defendants. Gaines County declined to amend, and the case was dismissed. The judgment was reversed by the Court of Civil Appeals, and the cause was remanded to the trial court, 152 S. W. (2d) 509. A writ of error was granted by this Court.

■ The controlling question presented here for decision is whether the allegations contained in the petition of Gaines County raised an issue of fact for determination. In passing

upon a general demurrer, the Court must assume that the allegations contained in the petition are true. We shall therefore analyze such petition, to ascertain if the allegations contained therein, when viewed as a whole, raised an issue of fact for determination.

The petition is long. The material facts alleged are as follows: That Gaines County lies immediately south of Yoakum and Terry counties, and that the north line of Gaines County forms the entire south line of Yoakum County and part of the south line of Terry County, and that such boundary line is in dispute. It is alleged that the said three counties were created by an Act of the Legislature in 1876, and that the Act defined the boundary in question, but that the line was not located on the ground. That in 1900, before the three counties were organized, the Legislature decreed that much of the land in that vicinity, including that in Yoakum and Terry counties, should be surveyed and sectionalized, for the purpose of placing it on the market to be settled; that Col. D. S. Woods was employed to make the survey, and in his work it became necessary to run a line between several counties, including those in this suit. That line began at a stone monument at the northwest corner of Fisher County, and ran west to the border of New Mexico, passing between Gaines County on the south and Yoakum and Terry counties on the north. The field notes of the Woods line are copied in the petition. They indicate that at the time the line was run the land was undeveloped, and consisted mostly of open prairie. The line was not marked and identified as required by statute. As an example of the description of the line run, some of the calls are: "Thence on West over sandy soil, Mesq. & shin oak grass thence 1900 varas, mile 6 West on firm ground & small mesq.; thence on west over rolling sandy surface & shin oak 1900 varas, Mile 11 West; * * * thence on West over undulating sandy plain, 1900 vrs; Mile 17 West; thence on West over rolling plain, 1900 vrs., Mile 19 West on slope to West," etc. There are several calls for water bottles in the ground, or for stakes. The trees called for are not described as being marked. The last call is "Thence on West from Mile 49 West, at 468 top of high ridge, 962 vrs. to N. West corner of Gaines County and the S. W. corner of Yoakum County, on the 103rd Meridian, the East line of New Mexico 6638 vrs. South & 88 vrs. West from monument established by Twitchell * * *." Col. Woods died before the survey was completed, but the work was finished by another surveyor. The

survey was filed in and accepted by the General Land Office. It is not alleged that this line was any more definitely fixed on the ground, but it is alleged that this line became the accepted line between the counties when they were organized: Terry County in 1904, Gaines County in 1905, and Yoakum County in 1906; and that this line was recognized by all concerned for the purpose of determining voting precincts, school districts, justice precincts, etc.; that the landowners south of the line paid taxes in Gaines County, and those north thereof paid taxes in Yoakum and Terry counties; that the Woods line was the recognized and established boundary line between the counties in 1911, when the Legislature adopted the Revised Statutes of 1911, including Article 1400, which provided that, "County boundaries of the counties in this state as now recognized and established are adopted as the true boundaries of such counties * * *"; and that the Woods line was the recognized line in 1925, when the same statute was carried forward in Article 1606.

The petition then states: "In the alternative, if plaintiff be mistaken * * * that the line * * * marked by Col. Woods * * * was the established boundary line * * *, then plaintiff says that the line so surveyed * * * by Col. Woods in 1900 was only a few varas North of and was approximately on and along the South lines of Surveys 1 to 6, inclusive, Block C-37, Surveys 1and 2, Block C-36; Surveys 79 to 92, inclusive, Block DD John H. Gibson surveys, and Surveys 879 to 906, inclusive, Block D. John H. Gibson surveys; that for the convenience of all said counties, and their respective officers, and of the people and property owners of said counties, the South boundary lines of the above mentioned surveys, which is approximately the Woods line, was adopted, recognized and established by common consent between said counties * * * and that said line was the recognized and established line * * * when the Revised Statutes of 1911 were enacted * * * and also when the Revised Statutes of 1925 were enacted, * * * and by reason of all of which said line was validated * * *."

Gaines County alleged that the boundary line was further established by Act of the Legislature in 1920, creating the Blythe County Line Independent School District out of territory in Gaines, Terry, and Yoakum counties, and defining the boundaries of the district as the established line between the three counties.

The petition states: "If the boundary line between Gaines and Yoakum counties * * * ever was or became not sufficiently definite and well defined, that the Commissioners and/or County Courts of said counties in 1923 or 1924, by proper legal proceedings, appointed and employed Sylvan Sanders, a * * * surveyor to ascertain, by actual survey * * * said line * * *. That said Sanders did * * * established the boundary line * * * along the South boundary line of Block D, John H. Gibson Survey, * * * and that the line so surveyed.* * * was thereafter approved * * * as the true boundary line * * *."

The petition then alleges still another line, which is not the Woods line, and says that it is the true line. It states that in 1923 the County Courts and Commissioners Courts of Gaines and Yoakum counties got together and agreed that the boundary line was the South line of Block D, John H. Gibson Survey, and that the counties shared expenses in the construction of a county line road thereon.

The petition continues that, notwithstanding the fact that the said boundary was already established, the "Commissioners and/or County Courts" of the three counties met jointly in Brownfield, Texas, in March, 1935, and mutually agreed that said line should be surveyed, marked and due returns made, permanently establishing said line, and said courts did each on said date pass the following order:

"On this the 7th day of March A. D. 1935, came on to be considered the matter of legally and permanently establishing the South Line of Yoakum County, the South line of Terry County adjacent to the North line of Gaines County and the North line of Gaines County, Texas, and it appears to the Court that said boundary line has never been defined, surveyed, marked and due returns thereof made in accordance with law, and that the County and Commissioner's Courts of Gaines County, Terry County, and Yoakum County having met jointly in Brownfield, Texas, on this date and mutually agreed that the said line should be surveyed, marked and due returns made permanently establishing said line by agreement as follows: That the South line of Yoakum County and the North Line of Gaines County, and the South line of Terry County adjacent to said north line of Gaines County shall hereafter be located along the present surveyed sections; the south lines of the following sections—6 and 7 Block A6—across 34, South line 35A,

35B, 36A, 36B, 37, and 38 Block Ax, Sections 28, 29, and 30 in Block C-35, Section 19, and 20 Block C-34, Sections 19 and 20 Block C-33, Sections 19 and 20 Block C-32, Section 19 and 20 Block C-31, and the NE corner of Gaines County to be set in said east-west tangent in line north-south of the NW corner of Dawson County as marked by W. R. Standefer, about 1912, that all lands north of the said south line of said sections shall hereafter be assessed in Yoakum-Terry counties and lands south of said south line of said sections shall be assessed in Gaines County.

"The Commissioners of said Counties having jointly employed A. L. Harris, surveyor of Lubbock, Texas, to mark and make his returns as above set out: Wherefore, this court appoints said Harris to so mark and make his returns thereto as set out in said proposal hereto attached and made a part hereof."

The petition states that the surveyor Harris completed the survey in June, 1935. He made his report, field notes, and blue print maps, and filed them with the county clerk of each of the counties. The reports were examined and approved by the County Judge of each county, and certified copies of the above agreement and Harris' report, field notes, and maps were filed in the office of the Commissioner of the General Land Office, and were there approved. It is alleged that: "From and after the filing of said report, field notes and maps and the approval thereof by said County Judges, each of said counties and its officers recognized said line so agreed upon, surveyed and marked by said Harris as the boundary line between the plaintiff and defendants counties, and the lands lying South thereof were assessed as in Gaines County, in accordance with the terms of said agreement."

The prayer is that the Court adjudge the north line of Gaines County to be that line surveyed by Woods; or, in the alternative, that the north boundary be adjudged to be along certain survey lines hereinbefore set out; or, in the further alternative, that the court fix "the true boundary line between the plaintiff and defendant counties."

It is undisputed that the foregoing order was entered by the commissioners courts of the three counties. It is alleged that such order was entered by the commissioners courts or county courts of such counties, and that same was approved

by the county judges of such respective counties. For the purposes of this opinion we shall refer to such order as the judgment of the commissioners courts of the three counties.

■ Our courts have repeatedly held that the judgments of commissioners courts, in all matters over which they are given jurisdiction, are entitled to the same consideration as those of other courts provided for by the Constitution; and that such judgments are not subject to collateral attack, and are review-. able only upon appeal or in a direct action for that purpose, in the absence of a showing of gross abuse of discretion, or of fraud or collusion or lack of jurisdiction. Tarrant County v. Shannon, 129 Texas 264, 104 S. W. (2d) 4; West Production Co. et al v Penn (Civ. App.), 131 S. W. (2d) 131, (writ refused) ; Ashburn Bros. v. Edwards County (Comm. App.), 58 S. W. (2d) 71; 11 Tex. Jur., pp. 566, 567, secs. 39, 40.

We think it affirmatively appears from the allegations of the petition that there was a bona fide dispute between the three counties as to where the boundary line was, and that the commissioners courts of the three counties acted in good faith in entering into the settlement. The field notes of the Woods line, run in 1900, before any of the three counties had been organized, was not marked on the ground, as required by law. The calls in the field notes, such as "over undulated sandy prairie 1900 varas," "over rolling plains 1900 varas," "West over undulated sandy surface and shin oak & mesq. 1900 vrs, Mile 40 West offset 27.77' North to Latitude. line, a stake & Bottle set in ground under sandy mound," and the call to "a Manitou water bottle in mound of sandy soil," show that there is considerable room for doubt as to the location on the ground of the Woods line.

It is affirmatively alleged in the petition that the counties have treated the south line of certain surveys, which would place the line "a few varas North" of the Woods line, as being the boundary line. And it also affirmatively appears that, as between Gaines County and Terry County, a portion of the boundary line was considered to be along the south line of Block D, John H. Gibson Survey, and that a county line road was constructed thereon. It is not alleged that this line is on the Woods line.

It is also alleged that the order entered by the respective courts contained the following recital: *"It appears to the Court*

*that said boundary line has never been defined, surveyed, marked, and due returns made in accordance with law,"* and that the purpose of the agreement was the *"legally and permanently establishing the South line of Terry County * * *." Yoakum County * * * and the north line of Gaines County * * *."* (Italics ours.)

There is not the slightest intimation in the petition that the commissioners courts of the counties were not acting in good faith. No attack was made on these judgments from the time of their entry, in March, 1935, to the filing of this suit, in December, 1940. This suit is a collateral attack on these judgments; and the only complaint is the want of power,—not that the courts were acting fraudulently or in bad faith.

It is the contention of petitioners that the three counties, acting through their county courts and commissioners courts, were without power to enter into a binding agreement as to the boundary line in question. If a boundary line of a county has been established and definitely marked, and is known and recognized, then such line must be accepted. This was the purpose of the enactment of Article 1606, Vernon's Annotated Civil Statutes. See also Jones v. Power, 65 Texas 207; 11 Tex. Jur., p. 540, sec. 15, and cases cited in footnotes. On the other hand, if the boundary line of a county is not sufficiently definite and well defined and established, Articles 1582-1592, Vernon's Annotated Civil Statutes, provide the method how such boundary line may be established. Article 1582 reads:

"Whenever it appears to the satisfaction of the county court of any county, or notice shall be given such court by the Land Commissioner that the boundary or any part thereof, of the county is not sufficiently definite and well defined, such court shall appoint an experienced and competent practical surveyor, whose duty it shall be to ascertain by actual survey the boundary, or any part thereof, of said county, and to make and establish the lines and corners in the manner herein prescribed. The court, in the order making the appointment, shall specify the line or lines to be run, and the corners to be established and marked; and shall in all things conform to the law definining the boundaries of said county."

The succeeding articles specify the method of making such survey.

Article 1591 gives a county the right to institute suit against adjacent counties for the purpose of ascertaining their boundary lines. That Article provides that "any county in this State may bring suit against any adjoining county or counties, for the purpose of establishing the boundary line between them." The Article further provides where such suit shall be brought. It also provides: "If, in the trial of any such cause, it is found that the boundary line between the counties involved has never been established and marked, or if marked has become indefinite and undefined, said court shall have power to re-establish the same and order it marked. Any boundary line so established by such judgment shall thereafter be regarded as the true boundary line between the counties in question; provided, that if it shall be found in any such cause that the boundary line in question has been heretofore established under the law then in force, the same shall be declared to be the true line, and shall be resurveyed and established as such."

■ Since counties have the power to litigate their boundary controversies, we think that, when acting in good faith, they have the power to settle their bona fide boundary disputes out of court, so long as they do not violate any provision of the Constitution. This would be a great saving of time and expense to the counties, and would avoid the necessity of long and tedious lawsuits, with the possibility of appeal and retrial.

The next contention is that the action of the county courts and the commissioners courts violated Article 9, Section 1, Subsection 3, of the Texas Constitution. That Article provides, among other things, that "no new counties shall be created with a less area than nine hundred square miles, in a square form," subject to certain exceptions, which do not exist in this case. It also provides:

"Third. No part of any existing county shall be detached from it and attached to another existing county until the proposition for such change shall have been submitted, in such manner as may be provided by law, to a vote of the electors of both counties, and shall have received a majority of those voting on the question in each."

That the three counties each contain the 900 square miles required by the Constitution is not questioned. The field notes were filed with the Commissioner of the General Land Office, as required by law, and such fixed line was recognized by property

owners and by the three counties from that date until the filing of this suit. There is nothing in the record to show that it was the purpose of the three counties, in entering the foregoing order, to detach land from one county whose boundary lines were already established, and attach same to some other county. On the contrary, it clearly appears that the sole purpose was to definitely fix the undefined boundary line between the three counties.

We see nothing in Article 9, Section 1, Subsection 3, of the Constitution which prohibits the settlement of a bona fide boundary dispute between counties. That portion of the Constitution was intended to prohibit the willful detaching of a part of one county where the boundary lines are defined, and attaching same to another county; unless authorized by a majority of the voters. It was not intended to condemn the peaceful settlement of bona fide boundary disputes between counties acting in good faith, so long as they do not violate the Constitution.

The allegations contained in respondent's petition clearly show that the boundary line between Gaines County and Yoakum and Terry counties was indefinite, and that the three counties desired to definitely settle the boundary line between such counties. To that end the commissioners courts of the three counties met and provided means, in accordance with the law, to survey and definitely fix the boundary line between the three counties. Prior to the time in 1935 when the three counties provided a method for the establishment of such boundary line, there existed in the minds of the three commissioners courts an issue of fact, and they passed the foregoing order, which settled that fact as between them. The case of Lynn County et al v. Garza County (Comm. App.), 58 S. W. (2d) 24, involved the right of counties to settle by agreement their boundary line disputes, and, in discussing the right of counties to definitely fix their boundary lines by agreement, it was said:

"The rule is well settled that counties may settle their boundary disputes, and, where the line is established 'in accordance with the law,' their acts will be approved. In fact, it is the public policy of this state to look with favor upon peaceable boundary agreements between interested counties."

We therefore hold that the petition presented a question of law, and not a question of fact, and that the trial court properly

sustained the general demurrers of Yoakum and Terry counties, and that the Court of Civil Appeals erred in reversing that action. The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered June 17, 1942.

Rehearing overruled July 15, 1942.