**MOBIL OIL CORPORATION, Appellant,**

v.

**MATAGORDA COUNTY DRAINAGE DISTRICT NO. 3, et al., Appellees.**

No. 1302.

Court of Civil Appeals of Texas, Corpus Christi.

April 12, 1979.

Rehearing Denied April 30, 1979.

Allen Wood, Wood, Burney, Nesbitt & Ryan, Corpus Christi, Forrest Smith, John E. Holt, Dallas, for appellant.

Austen H. Furse, Asst. Atty. Gen., Austin, for intervenors.

Joyce Cox, Cox, Pakenham & Roady, Houston, Fred P. Holub, County Atty., Bay City, for appellees.

## OPINION

NYE, Chief Justice.

This is a summary judgment case. Appellant, Mobil Oil Corporation brought suit in the district court of Matagorda County, Texas, against defendants, Matagorda County Drainage District No. 3, the Commissioners Court of Matagorda County, and the members of the Commissioners Court, attacking an order of the Commissioners Court which annexed to the Drainage District certain submerged lands in the Gulf of Mexico covered by an oil, gas and mineral lease owned by Mobil. The Attorney General intervened on behalf of the State of Texas because the constitutionality of Tex. Rev.Civ.Stat.Ann. art. 8176b–1 (1971) had been called into question. The defendants filed a collective motion for summary judgment and motion to dismiss, and Mobil filed a motion for summary judgment. The trial court granted the defendants' motions and denied Mobil's motion. Mobil appeals to this Court.

Mobil's petition alleged that on April 15, 1974, the Commissioners Court passed an order annexing certain territory to be included within the Drainage District. Included in such annexed territory was an area in the Gulf of Mexico upon which Mobil owned an oil, gas and mineral lease located about eight miles from the shore, completely inundated by the Gulf waters.

Mobil alleged, in essence, that the Commissioners Court order was invalid because: 1) the Commissioners Court had no legal authority or power to annex territory in the Gulf of Mexico for the benefit of the Drainage District; 2) that if the statutes of Texas should be construed to authorize such action, such were unconstitutional; 3) that because Mobil's lease received no benefit from being in the Drainage District, any tax levied would be unconstitutional under both the Texas and the United States Constitutions; and 4) that the order of the Commissioners Court was arbitrary, and not supported by substantial evidence or by any evidence.

The Drainage District and the Commissioners Court each answered by a general denial and, collectively, filed a motion for summary judgment alleging, in essence, the following five grounds in support of their motion:

1) The Drainage District's territory and boundaries were duly extended to incorporate the area in question which is a part of the County of Matagorda, Texas, pursuant to valid legislative authority; that the Legislature had the power to tax the land affected in the interest of general welfare and authorized the Drainage District, acting through the Commissioners Court to provide for such taxation; and that the actions of the Commissioners Court were conclusive as to all judgments it made which were within the scope of the duties and powers so delegated and which are conclusive on either or direct or collateral attack.

2) Mobil's suit is a collateral attack on the judgment of the Commissioners Court and on such an attack, the judgments and actions of the Commissioners Court are conclusive.

3) Neither the facts alleged nor the undisputed facts entitle Mobil to relief whether the attack on the Commissioners Court judgment is a direct or collateral attack.

4) There are no factual disputes or issues of facts which would entitle Mobil to relief.

5) Under no circumstances here present is a Court entitled to supersede the legislative activities or judicial actions of the Commissioners Court here involved.

Attached to their motion were minutes of the Commissioners Court annexing the territory in question and an affidavit of the then County Judge, the Honorable Bert Huebner, which described the territory annexed, mentioned considerations of the Commissioners Court in annexing the territory, and stated that taxation in the territory so annexed "is strictly on an ad valorem basis for the general purpose of the district, . . . no formal benefit allocation is made or attempted;" that Mobil did not appear at the hearing on the proposal to extend the district and took no action by quo warranto or by certiorari in any district court to challenge the Commissioners Court action, nor did it seek rehearing by the Commissioners Court; and that of nineteen taxpayers in the offshore area, Mobil was the only taxpayer to refuse to pay the tax assessed.

Mobil's reply to the defendants' motion alleged, in addition to the allegations of its petition, that it was entitled to summary judgment on the basis that: 1) its oil and gas lease is in the Gulf, eight miles from shore and under sixty feet of water; 2) the oil and gas lease cannot be drained and the Commissioners Court finding that it was feasible and practical to drain it is incorrect, contrary to physical facts, unsupported by substantial evidence and is wholly arbitrary; and 3) that all of the other findings of the Commissioners Court are also unsupported by evidence. In support of its motion, Mobil filed affidavits of C. D. Akers, senior production foreman of Mobil, and J. R. Lemons, a tax agent employed by Mobil.

The trial court held a hearing to consider the respective motions. At the conclusion, the judge entered an order granting the defendants' motion, denying Mobil's motion, and holding Tex.Rev.Civ.Stat.Ann. art. 8176b–1 (1971) to be constitutional.

Appellant's points of error on appeal, when grouped, involve three major conten-

tions: 1) the Commissioners Court had no authority to enter the order of April 12, 1974 (annexation order); 2) the Court acted arbitrarily in each finding it was required to make; and 3) the taxation of Mobil's property violates its constitutional rights of equal protection and due process. Before addressing these points, we must first consider appellee's contention which, in effect, is that there can be no attack on the order of the Commissioners Court in this case because ". . . the judgment of the Commissioners Court rendered . . . is final." See Tex.Water Code Ann., § 56.082 (1972).

■ We recognize the general rule that, although Commissioners Courts are courts of limited jurisdiction in the sense that their powers are limited to those powers expressly or impliedly conferred upon them by the Constitution and statutes, when acting with the sphere of powers so conferred, their judgments are entitled to the same consideration as those of other constitutional courts and may not be collaterally attacked, unless void. *Yoakum County v. Gaines County*, 139 Tex. 442, 163 S.W.2d 393 (1942); *Scott v. Graham*, 156 Tex. 97, 292 S.W.2d 324, 327 (1956); 15 Tex.Jur.2d (Counties), § 44 (1959). We are of the opinion that whether this suit be considered a direct or collateral attack, the Commissioners Court order, contrary to appellees' assertion, is not beyond all scrutiny of the appellate courts.

Article 5, Section 8 of the Texas Constitution grants the district courts "appellate jurisdiction and general supervisory control over the County Commissioners Court, *with such exceptions and under such regulations as may be prescribed by law*." (Emphasis added). Substantially the same language is found in Tex.Rev.Civ.Stat.Ann. art. 1908 (1964). The Legislature has prescribed no exceptions and has only established the procedure for appealing orders of the Commissioners Court in a limited number of situations. While the Legislature has prescribed

a method of appealing from the orders of the Commissioners Court establishing a Water Control and Improvement District (Tex.Water Code §§ 51.022–51.025) (1972), the Legislature has never prescribed a procedure for appealing from the orders of the Commissioners Court creating a drainage district [1] or annexing additional territory to a drainage district, (the latter being the situation involved herein). Nor has the Legislature established the method and procedure for invoking the appellate jurisdiction and supervisory control of the district court over the actions of the Commissioners Court by any statutory enactment. *Scott v. Graham*, 156 Tex. 97, 292 S.W.2d 324, 328 (1956). Certiorari has been suggested as one appropriate method of review. See *Scott v. Graham*, supra, 156 Tex. 97, 292 S.W.2d at 328, and authorities cited therein.

■ The supervisory power of the district court over the judgments of a commissioners court can only be invoked when such court acts beyond its jurisdiction or clearly abuses the discretion conferred upon it by law. See Article 5, Section 8 of the Constitution and Article 1908 of the Revised Civil Statutes; *Yoakum County v. Gaines County*, 139 Tex. 442, 163 S.W.2d 393, 396 (1942); *Cook Drilling Co. v. Gulf Oil Corp.*, 139 Tex. 80, 161 S.W.2d 1035, 1036 (1942); *Tarrant County v. Shannon*, 129 Tex. 264, 104 S.W.2d 4, 9 (1937); *Stovall v. Shivers*, 129 Tex. 256, 103 S.W.2d 363 (1937); *Nueces County Water Control & Improvement Dist. v. Wilson*, 304 S.W.2d 281, 286 (Tex.Civ. App.—El Paso 1957, writ ref'd n. r. e.). This supervisory jurisdiction can be invoked in a direct attack in the district court when it is alleged that the Commissioners Court order is voidable as being arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction. See *Live Oak County v. Lower Nueces River Water Sup. Dist.*, 446 S.W.2d 14, 27 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.). We are of the opinion that Mobil's suit, although over two years

---

1. Section 56.083(b) (Tex.Water Code Ann. 1972) does authorize a quo warranto proceeding brought in the name of the state by the attorney general to enjoin the formation of a district or to contest the validity of a district or its bonds.

elapsed before filing, should be considered a direct attack upon the County Commissioners Court order. See *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 327 (1895). Mobil's suit is the first one filed following the Commissioners' hearing. It alleged that the Commissioners Court order was void because it lacked jurisdiction, because its action was arbitrary and because it was not supported by substantial evidence. We hold that the district court had jurisdiction to consider Mobil's complaint.

■ In considering Mobil's points of error, we will keep in mind the familiar rules governing our review of summary judgments. Rule 166–A, T.R.C.P. *Great American Reserve Ins. Co. v. San Antonio Plumbing Sup. Co.*, 391 S.W.2d 41 (Tex.Sup.1965). In this case, affidavits and depositions were filed. Such affidavits supporting or opposing the motions must set forth such facts as would be admissible in evidence. They must be factual. Conclusions of the affiant are not considered to have any probative value, and generally opinion evidence alone merely raises fact issues and is insufficient in most instances to prove a fact as a matter of law. *Hidalgo v. Surety Savings & Loan Association*, 487 S.W.2d 702 (Tex.Sup. 1972); *Broussard v. Moon*, 431 S.W.2d 534 (Tex.Sup.1968); *Crain v. Davis*, 417 S.W.2d 53 (Tex.Sup.1967); *Travis County Water Control & Improvement Dist. No. 12 v. McMillen*, 414 S.W.2d 450 (Tex.Sup.1966). Summary judgment is proper only where it appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962).

■ Mobil's points of error under its first grouping (one, two and eight), question the jurisdiction of the District and of the Commissioners Court. Mobil, relying primarily upon the language found in paragraph 4 of Tex.Rev.Civ.Stat.Ann. art. 8176b–1 (1971), argues that "land that can be drained is the only area authorized to be included in such [drainage] district." Generally, there are three jurisdictional elements: 1) jurisdiction over the subject matter; 2) jurisdiction over the person or res; and 3) power to render the particular relief awarded. See *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325 (1895); *Toler & Crosby v. Ayres*, 1 Tex. 398 (Tex.Sup.1847); 34 Tex.Jur., Judgments, §§ 269–284 (1962).

■ Mobil's arguments that the District did not have statutory authority to annex the Gulf waters in question ignore completely the applicability of Section 1 of Article 8176b–1 which provides, in relevant part, as follows:

"Any drainage district in this State heretofore or hereafter organized under the provisions of Section 52, Article III, Constitution of Texas, which district shall not have theretofore been converted into a conservation and reclamation district . . . and which district lies wholly within one county and has no outstanding bonds, may have defined *areas of territory contiguous to the district and lying wholly within the same county but outside of any other drainage district and outside of any incorporated city, town or village added to said district in the following manner* . . ." (Emphasis added).

This section expressly granted appellee District the authority to annex "additional territory" provided the territory to be annexed: 1) was contiguous to the existing district; 2) lies wholly within Matagorda County; 3) lies outside of any other drainage district; and 4) lies outside of any incorporated city, town or village.

This additional area the appellee District was authorized to annex is described generally as "territory" and is not limited specifically by statute to "land that can be drained." The definition of "territory," according to its usual meaning, means "the land and waters under the jurisdiction of a nation, state, ruler, etc." Webster's New World Dictionary (2d College Ed. 1974). When territory is used in a general legal sense, it is not limited solely to land. See Black's Law Dictionary (4th Ed. 1957); see also "Territorial Property," Black's Law Dictionary (4th Ed. 1957).

One of Matagorda County's borders is in the waters of the Gulf of Mexico. In accordance with Tex. Natural Res.Code, § 11.-012, § 11.013 (1978), Matagorda County has a three marine league boundary extension from the coastline into the Gulf of Mexico. This is pursuant to the decision of the United States Supreme Court in *Texas v. Louisiana*, 426 U.S. 465, 96 S.Ct. 2155, 48 L.Ed.2d 775 (1976). See also *United States v. Louisiana*, 389 U.S. 155, 88 S.Ct. 367, 19 L.Ed.2d 383 (1967). The official county maps and boundary descriptions, (which were a part of the summary judgment evidence), established that the area annexed by the Commissioners Court ruling, including the area in question here, was wholly within Matagorda County. Mobil does not contend its leases are outside the territorial jurisdiction of the County.

The undisputed summary judgment evidence established: 1) that the Matagorda Drainage District had not been converted into a conservation and reclamation district; 2) that such district had no outstanding bonds; 3) that the annexed territory in question was contiguous to the then existing district; 4) that such territory was located outside of any other drainage district; and 5) that such territory was outside of any incorporated city, town or village. Mobil does not contend that any of these statutory requisites have not been established by the summary judgment proof. We, therefore, conclude that appellee District had statutory authority to seek to annex additional territory, including the Gulf waters, located within its county boundaries and which were contiguous to the District.

■ Texas Water Code Annotated (§ 56.-082 (1972)), which pertains to the jurisdiction of the commissioners court over proceedings pertaining to drainage districts, provides as follows:

"(a) Except as otherwise provided in this chapter, the commissioners court has exclusive jurisdiction to hear and determine

(1) contests and objections to creating a district;

(2) matters relating to creating a district; and

(3) *all proceedings of a district after it is organized.*

(b) The commissioners court may adjourn a hearing from day to day and the judgment of the commissioners court rendered under Subsection (a) of this Section is final." (Emphasis added).

Paragraph 1 of Article 8176b–1 requires a petition seeking to annex additional territory as defined in Section 1, above discussed, to be presented to the commissioners court of the county (here Matagorda) embracing the district. It requires the petition to describe the territory proposed to be annexed by metes and bounds, and also requires the petition to contain the requisite number of authorized signatures. Paragraph 2 of this article requires the Commissioners Court to set a hearing date on the petition and to issue public notice of the hearing if the Commissioners Court finds that the petition, as presented, meets the requirements of Subsection 1. Included in the summary judgment evidence were the February 25, 1974, minutes of appellee Commissioners Court containing the findings required by Article 8176b–1, § 1(1) and ordering the public notice required by Article 8176b–1, § 1(2)2. Nowhere does Mobil contend that these requirements were not satisfied. We conclude that the order of appellee Commissioners Court annexing the territory in question cannot be attacked on the basis that such court did not have subject matter jurisdiction or the authority to act on the annexation petition.

Mobil's next contention is, in effect, that appellee Commissioners Court exceeded its jurisdictional authority to act on the annexation petition by ordering the annexation of the particular Gulf waters in question here. Based on the language contained in paragraph 4 of Article 8176b–1,[2] Mobil contends

---

2. Paragraph 4:
"If at the hearing it appears to the Commissioners Court that the *drainage of the territory proposed to be annexed is feasible and practicable,* and that it is needed, that the drainage would be conducive to the public health or

that the Commissioners Court is authorized to annex land to a drainage district only if it finds:

"1. That to drain such territory is feasible and practicable.

2. That the drainage of such territory is needed.

3. That the drainage would be conducive to the public health or would be a public benefit or utility.

4. That both the district and the *territory to be annexed* would be benefited by its addition to the district." (Emphasis added).

Accordingly, Mobil argues that the statutory directive contained in this paragraph, ("but if said Court finds any of said issues in the negative, it shall enter an order on its Minutes denying the petition for annexation of such territory to the district"), precludes the Commissioners Court from including in the proposed annexation that portion of the Gulf of Mexico upon which its leases are located (or any other portion of the proposed territory which, when considered in isolation, cannot be drained) because the findings as to this territory must necessarily be negative findings.

■ We do not agree with Mobil's narrow construction of this paragraph. Such construction would have us engraft onto the paragraph a further narrow requirement that the Commissioners Court must always examine each proposed territory to be annexed and determine whether or not each and every portion of such territory, when considered in isolation or by itself, can be drained, and then to exclude each such por-

tion that cannot be drained. Such a requirement is not warranted by the express terms of the statute nor by logic or reason. This is not to say, however, that inclusion of submerged lands in the territory proposed to be annexed in and of itself is always warranted or required.

■ Considering, then, all of the provisions of Article 8176b–1, we believe the Legislature intended to establish an efficient, fair method to annex additional territory to drainage districts. We also note paragraph 3 of this article which provides for a method for interested persons who own real or personal property, which might be affected by the proposed annexation, to be heard on the matter. This paragraph states:

"(3) All persons whose land or other property might be affected by the proposed annexation or part thereof and all other interested persons may appear before said Court at the hearing and urge or contest the addition of such territory or parts thereof to the district and offer evidence pertinent to the issues mentioned in paragraph (4) of this Section 1, and said hearing may be adjourned by the Court from day to day."

Mobile did not appear at the hearing to contest the inclusion of the submerged Gulf waters upon which it had leases. It did not present evidence pertinent to the statutory issues before the Commissioners Court. We believe that this paragraph places some burden upon persons who seek to have a portion of the "proposed territory to be annexed" excluded from the annexation or-

---

would be a public benefit or a public utility (either sanitary, agricultural or otherwise) and that both the district and the territory proposed to be annexed would be benefited by the addition of such territory to the district, then the Court by order duly entered upon its Minutes shall so find and shall declare and decree such proposed territory to be annexed to the district and in said order shall by metes and bounds set forth a description of the territory added to the district and a description by metes and bounds of the district as enlarged. *But if said Court finds any of said issues in the negative, it shall enter an order on its Minutes denying the petition for the annexation of such territory to the district.* If the Court finds in favor of annexing

territory to the district, such order need not add to the district all of the territory described in the petition if upon the hearing a modification or change is found necessary or desirable and such order must exclude and not annex to the district those portions, if any, of the territory proposed by the petition to be added to the district as to which the Court shall find any of *said issues in the negative.* In the event the order annexes any territory to the district, a copy of such order shall be filed and recorded in the Deed Records of the county in which the district is situated, and such territory shall be a component part of the district from and after the recording of the copy of such order." (Emphasis added).

der to appear before the Commissioners Court at the hearing and to present evidence in support of their position. To conclude otherwise would place an onerous burden upon the Commissioners Court to scrutinize each segment of the proposed territory and its failure to do so might subject it to a collateral attack on its findings.

Contrary to Mobil's contentions, we conclude that a fair reading from the four corners of this article evidences the legislative intent to consider the "territory proposed to be annexed" as a unit unless the evidence showed that such would be patently arbitrary. In addition to our comments above, specifically concerning Section 1 of this article and the all-inclusive nature of the territory the District can seek to have annexed, we also observe that the paragraph upon which Mobil places its strongest reliance (paragraph 4), of the same article refers to the "territory" in a unified sense by stating that "[i]f . . . it appears . . . that the drainage of the *territory proposed to be annexed* is feasible and practicable . . .", (that it is needed, conducive to public health, public benefit, etc.). (Emphasis added). It is noteworthy that, when a drainage district is originally created pursuant to the terms of Tex.Water Code Ann., §§ 56.011–56.032 (1972), virtually identical findings concerning the "proposed district" are required by Section 56.-019(a) of the Water Code.[3] The phrase "drainage of the proposed district," has been interpreted, in effect, to refer to the "scheme of the drainage proposed." See *Wharton County Drainage Dist. No. 1 v. Higbee,* 149 S.W. 381, 386 (Tex.Civ.App.—Galveston 1912, writ ref'd) (considering the identical language of Subsection 56.019(a) in its prior enactment: Acts 1911, 32nd Legis., p. 215, ch. 118, § 4)). This interpretation clearly indicates to us an overall perspective as to a drainage plan within the entire district rather than a limited perspective as to drainage of each of the various portions of the territory in isolation. We see no reason to apply a more restrictive interpretation to the phrase "drainage of the proposed territory to be annexed" contained in paragraph 4 of Article 8176b–1.

 Although paragraph 4 does not expressly require the Commissioners Court to examine *in isolation* each portion of the territory proposed to be annexed, the following language of this paragraph does indicate that the Commissioners Court is not limited to accepting or rejecting, as a unit, all of the territory described in the annexation petition:

"If the Court finds in favor of annexing territory to the district, such order need not add to the district all of the territory described in the petition if upon a hearing a modification or change is found necessary or desirable and such order must exclude and not annex to the district those portions, if any, of the territory proposed by the petition to be added to the district as to which the Court shall find any of the said issues in the negative."

This language, by its express terms, authorizes, but does not require, exclusion of territory described in the annexation petition if a "modification or change is found necessary" and requires exclusion of any portion of such territory as to which the court "shall find any of the said issues in the negative." The minutes of appellee Commissioners Court, on their face, comply with the above portion of Subsection 4. The Commissioners Court did not find a modification or change in the proposed territory to be necessary and it did not find any of the issues in the negative as to any

---

3. Section 56.019 provides as follows:

"(a) At the hearing on the petition, if it appears to the commissioners court that drainage of the proposed district is feasible and practicable and is needed and would be conductive to public health or would be a public benefit or a public utility, the commissioners court shall make findings to this effect.

(b) If the commissioners court finds any of the issues in Subsection (a) of this section in the negative, it shall dismiss the petition at the cost of the petitioners.

(c) The findings of the commissioners court shall be recorded."

portion of the territory described in the annexation petition. It, therefore, did not violate the express prohibition by failing to exclude the Gulf territory in question from the annexation order. We conclude that appellee Commissioners Court did not violate an express statutory prohibition when it entered findings as to the total territory sought to be annexed and in entering its order annexing the total territory.

We have examined the only two cases upon which Mobil relies to support its contentions under these first three points of error and find them to be distinguishable because express statutory prohibitions were violated in each instance. The case of *Galena Park v. City of Houston*, 133 S.W.2d 162 (Tex.Civ.App.—Galveston 1939, writ ref'd), involved an attempted annexation by one city of territory already annexed by another. There, the statutory authority to annex additional territory expressly limited the territory subject to such annexation by the following language:

> " 'The power granted . . . shall not authorize the extension of the territory of any city . . . so as to include any land which is already part of another city or town corporation . . . ' " *City of Galena Park v. City of Houston*, 133 S.W.2d 162, 163 (Tex.Civ.App.—Galveston 1939, writ ref'd).

In *City of Port Arthur v. Gaskin*, 107 S.W.2d 610 (Tex.Civ.App.—Beaumont 1937, no writ), a similar statutory prohibition was violated when the city attempted to annex territory not adjoining the corporation limits of the city of Port Arthur in contravention of the express statutory limitation. Because the city's actions exceeded its statutory authority, the court concluded that the attempted annexation was void and subject to collateral attack. See *City of Port Arthur v. Gaskin*, 107 S.W.2d 610, 613 (Tex.Civ.App.—Beaumont 1937, no writ). Such is not the case before us.

The analogous statutory provision in the case before us is contained in Section 1 of Article 8176b–1(1), previously quoted, which limits the territory to be annexed to territory which is: 1) contiguous to the district; 2) lying wholly within the same county but outside of any other drainage district; and 3) outside of any incorporated city, town or village. The undisputed summary judgment evidence established as a matter of law that the territory in question comes within these prescribed limitations. Mobil's points of error one, two and eight are overruled.

Mobil's second major contention (points of error 3–7) is that the trial court erred by failing to hold that the Commissioners Court acted arbitrarily and capriciously in each finding it made in its order which annexed additional territory to the Drainage District. Mobil's arguments under these points of error, again, are predicated, in part, upon the assumption that the Drainage District had no statutory authority to seek annexation of any parcel of additional territory which could not, itself, be drained. Our previous discussion concerning the proper construction of Article 8176b–1 applies equally here to this assumption. Apparently, Mobil contends that the trial court erred in granting appellees' motion for summary judgment, and erred in denying Mobil's motion for summary judgment because the Commissioners Court acted arbitrarily and capriciously in entering its order of annexation as a matter of law.

A fundamental rule in summary judgment practice is the failure of one party in a hearing on a summary judgment motion to discharge the burden which would rest on him at a trial upon the merits is not grounds for entering a summary judgment in favor of the other party. *Rio Bravo Oil Company v. Hunt Petroleum Corp.*, 455 S.W.2d 722, 728 (Tex.Sup.1970). When both parties move for summary judgment, each of the summary judgment motions must stand or fall on its own merits. *Tigner v. First National Bank of Angleton*, 153 Tex. 69, 264 S.W.2d 85 (1954). See *Baccus v. City of Dallas*, 454 S.W.2d 391 (Tex.Sup.1970). In this case, both parties filed motions for summary judgment.

That portion of Mobil's motion for summary judgment which sought to have the Commissioners Court order declared

void as being arbitrary, or not supported by substantial evidence, is governed by the "substantial evidence rule." See e. g., *Live Oak County v. Lower Nueces River Water Supply Dist.,* 446 S.W.2d 14 (Tex.Civ.App.— Beaumont 1969, writ ref'd n. r. e.). Where the substantial evidence rule applies, the court will indulge in a rebuttable presumption in favor of the validity of the administrative decision or order. *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752, 758 (Tex.Sup.1966); *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73 (1939); *Railroad Commission v. Shell Oil Company,* 139 Tex. 66, 161 S.W.2d 1022 (1942). The party complaining of the order has the burden to show that the orders are not reasonably supported by substantial evidence. *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752, 758 (Tex.Sup.1966); *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73 (1939); *Fuller v. Mitchell,* 269 S.W.2d 517 (Tex.Civ.App.—Dallas 1954, writ ref'd n. r. e.); *Kavanagh v. Holcombe,* 312 S.W.2d 399 (Tex.Civ.App.—Houston 1958, writ ref'd n. r. e.).

In a proceeding under the substantial evidence rule, the issue is whether the evidence introduced before the trial court (district court) shows facts in existence as of the time of the order (Commissioners Court) was entered, of such a substantial nature as to reasonably support the order. This issue is one of law and trial of the fact issues by a judge or jury is to be avoided. *Firemen's & Policemen's Civil Service Commission v. Hamman,* 404 S.W.2d 308 (Tex. Sup.1966); *Southern Canal Co. v. State Board of Water Engineers,* 159 Tex. 227, 318 S.W.2d 619 (1958). On a review governed by the substantial evidence rule, the issue is not whether the agency arrived at the proper conclusion on the basis of conflicting evidence, but whether it acted arbitrarily and without regard to the facts. *Railroad Commission v. Shell Oil Company,* 139 Tex. 66, 161 S.W.2d 1022 (1942); *Trapp v. Shell Oil Company,* 145 Tex. 323, 198 S.W.2d 424 (1946). The court will inquire, not whether the agency actually heard sufficient evidence, but whether the facts that existed at the time of the agency's decision or order were such as to justify its action. *Railroad Commission v. Shell Oil Company,* 139 Tex. 66, 161 S.W.2d 1022 (1942).

Where the requirements of Rule 166–A, Texas Rules of Civil Procedure, are satisfied, suits governed by the substantial evidence rule are not immune, per se, from disposition in a summary judgment proceeding. See *Cruz v. City of San Antonio,* 424 S.W.2d 45, 47 (Tex.Civ.App.—San Antonio 1968), and authorities cited therein, on appeal after remand, *Cruz v. City of San Antonio,* 440 S.W.2d 924 (Tex.Civ.App.— Waco 1969, no writ); *Baccus v. City of Dallas,* 450 S.W.2d 389 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.), 454 S.W.2d 391 (Tex.Sup.1970). However, in order for Mobil to have been entitled to a summary judgment, it had the burden to introduce sufficient evidence to prove that reasonable minds could not have reached the conclusion that the Commissioners Court reached in order to justify its action. See *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946); *Jones v. Marsh,* 148 Tex. 362, 224 S.W.2d 198 (1949); *Cruz v. City of San Antonio,* 440 S.W.2d 924, 925 (Tex.Civ.App. —Waco 1969, no writ). This it did not do.

There was very little summary judgment evidence, if any, before the trial court by either party which would be competent to support either motion for summary judgment based on the substantial evidence rule. Included in the summary judgment evidence were the depositions of the three current commissioners of the Matagorda County Drainage District, only one of whom had attended the hearing before the Commissioners Court. Each commissioner testified to the effect that drainage of the Gulf waters where Mobil's leases were located was indeed impossible and not contemplated. One commissioner testified that he could not "think off-hand of any benefit it (submerged land in the Gulf of Mexico) does receive" from its inclusion within the drainage district. Two commissioners suggested that Mobil would benefit because it uses the highways to transport oil rigs,

docks and other equipment necessary for its operations with the District and the Drainage District was responsible for draining the highways up to the boat docks. Most of the testimony contained in the depositions were mere opinions or conclusions of the drainage commissioners. Although opinion evidence is admissible, it is generally insufficient to establish a proposition as a matter of law. *Broussard v. Moon,* 431 S.W.2d 534 (Tex.Sup.1968). Mere conclusions of deponents are not competent summary judgment evidence. *Crain v. Davis,* 417 S.W.2d 53 (Tex.Sup.1967); *Hidalgo v. Surety Savings & Loan Association,* 487 S.W.2d 702 (Tex.Sup.1972).

The trial court had before it the affidavit of the Honorable Bert L. Huebner, the County Judge of Matagorda County, Texas, which stated in relevant part as follows:

"In taking the above mentioned actions which it took, the Commissioners Court of Matagorda County, Texas, to my knowledge, took into account all the relationships between several upland and seaward areas of the extended district, and the quality of life therein, both before and after extension, including the direct and indirect effects of constructing and operating old and new drainage facilities, some such effects being direct and others wholly indirect upon land owners, their lands and upon other persons on both upland and seaward properties, including (1) accessibility at all times by road and otherwise between each part of the extended district and all other parts, and between said district and the county and state areas lying beyond it, (2) the quality of life and all parts of said extended district, including such considerations as health (e. g., mosquito control), accessibility to recreation, and general resultant betterment of social and economic conditions."

This affidavit lists the factors the Commissioners Court considered in entering its order annexing the Gulf territory in question. It does not state necessary facts concerning the actual conditions then existing at the time the order was entered.

We have reviewed the entire record and conclude that Mobil failed to meet its burden to introduce sufficient, competent summary judgment evidence to prove that reasonable minds could not have reached the conclusion that the Commissioners Court reached in order to justify its action. The trial court, therefore, properly overruled its motion for summary judgment.

The appellees, in moving for summary judgment, had the burden of establishing affirmatively by summary judgment proof that conditions either conclusively support entry of the Commissioners Court order or make that action debatable or issuable. "Only thus may the proponents establish the validity of the ordinance (order) as a matter of law as required by Rule 166–A(c), Texas Rules of Civil Procedure." *Baccus v. City of Dallas,* 454 S.W.2d 391, 392 (Tex. Sup.1970).

The quality and competency of the summary judgment evidence before the district trial court and before us on appeal precludes us from holding that appellees met this summary judgment burden. The judgment of the trial court granting appellees' motion for summary judgment is accordingly reversed and that cause is remanded for a trial under the substantial evidence rule.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.