**Opinion of April 5, 2016 Withdrawn; Motion for Rehearing Denied; Motion to Strike Denied; Affirmed as Modified; and Substitute Opinion filed July 12, 2016.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-15-00161-CV

---

**GALVESTON COUNTY JUDGE MARK HENRY AND COUNTY COMMISSIONERS RYAN DENNARD, JOE GUISTI, STEPHEN HOLMES AND KEN CLARK, IN THEIR OFFICIAL CAPACITY AS THE GALVESTON COUNTY COMMISSIONERS COURT, Appellants**

**V.**

**KIMBERLY SULLIVAN, JUDGE, PROBATE COURT OF GALVESTON COUNTY, Appellee**

---

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 14-CV-1112**

---

### S U B S T I T U T E   O P I N I O N

We deny the parties' motions for rehearing; withdraw our opinion of April 5, 2016; and issue this substitute opinion in its place.

When Judge Kimberly Sullivan submitted her proposed budget for the 2014–2015 fiscal year to the Galveston County Commissioners Court, she included compensation for her services as the county's local administrative statutory probate court judge. The $5,000 payment was to be paid from the "contributions fund," a dedicated fund that "may be used only for court-related purposes for the support of the statutory probate courts in the county."[1] The commissioners court eliminated this payment from the budget, and Sullivan sued the members of the court in their official capacities under a state constitutional provision that grants district courts "general supervisory control" over the commissioners court. *See* TEX. CONST. art. V, § 8.

In this interlocutory appeal, the members of the commissioners court contend that the trial court erred in denying their plea to the jurisdiction because Sullivan failed to allege sufficient facts to establish the district court's jurisdiction over her claims against them. They additionally argue that they are entitled to legislative and governmental immunity from suit. We conclude that Sullivan invoked the trial court's jurisdiction over her claims by alleging that the members of the commissioners court acted arbitrarily and capriciously. We also conclude that when Sullivan filed her pleadings, the relief she sought was within the trial court's jurisdiction because she sought only mandamus, declaratory relief, and prospective monetary relief. By the time this case was submitted, however, some of the relief she requested had become retrospective monetary relief barred by governmental immunity. We therefore modify the trial court's ruling to grant the plea to the jurisdiction only as to Sullivan's requests for retrospective monetary relief; affirm the ruling as modified; and remand the case for further proceedings.

---

[1] *See* TEX. GOV'T CODE ANN. § 25.00213 (West Supp. 2015).

# I. MOTION TO STRIKE

The appellants are the members of the Galveston County Commissioners Court—Galveston County Judge Mark Henry and Galveston County Commissioners Ryan Dennard, Joe Guisti, Stephen Holmes, and Ken Clark—in their collective official capacity as the Galveston County Commissioners Court. *See* TEX. LOC. GOV'T CODE ANN. § 81.001 (West 2008) (providing that the members of the commissioners court are the county commissioners and the county judge, who presides over the commissioners court). For ease of reference, we omit the parties' titles, and we refer to Henry as though he were representative of all of the appellants.

Before reaching the merits of the appeal, we must address Henry's motion to strike certain material from the appellate record or from Sullivan's brief and its accompanying appendix.

## A. Sullivan's Response to the Jurisdictional Plea

Henry first asks that we strike Sullivan's timely filed response to the plea to the jurisdiction from the record. He states a number of reasons, none of which are valid.

### 1. Reason One: Henry did not ask for the response to be included in the record.

Although Henry is appealing the trial court's denial of his plea to the jurisdiction, he did not ask the clerk of the trial court to include Sullivan's response to his plea. The clerk nevertheless included the response and its exhibits in the record. While Henry acknowledges that Sullivan cites this material in her appellate brief, he nevertheless characterizes the documents as "unnecessary." Citing Texas Rule of Appellate Procedure 34.5(b), he asks us not only to strike the

unrequested material from the record, but also to strike those portions of Sullivan's brief in which she relies on those documents.

There is no support for granting such relief. Rule 34.5 provides that a party requesting unnecessary items can be required to pay for them, but it does not authorize material to be struck from the clerk's record. *See* TEX. R. APP. P. 34.5(b)(3). Moreover, a party, the trial court, or the appellate court can direct the clerk of the trial court to supplement the clerk's record, and the supplement becomes part of the appellate record. *See* TEX. R. APP. P. 34.5(b)(4), (c).

### 2. *Reason Two: Henry did not receive Sullivan's response before the hearing.*

Henry next contends that Sullivan failed to timely deliver a copy of her response to him. The record reflects that Sullivan's response was timely filed four days before the hearing, and according to the certificate of service, it was served the same day. *See* TEX. R. CIV. P. 21a(a)(1) (electronically filed documents must be served electronically if the email address of the recipient is on file with the electronic filing manager); TEX. R. CIV. P. 21a(b)(3) (electronic service is complete on transmission to the serving party's electronic filing service provider). The certificate is prima facie evidence of the fact of service, and the appellate record does not show that Henry offered proof in the trial court that he did not receive the response. *See* TEX. R. CIV. P. 21a(e). In an appendix to his reply brief, Henry has included material that is not part of the record in an attempt to introduce evidence that he did not timely receive Sullivan's response. He nevertheless concedes, both in his reply brief and in his motion to strike, that this court "must hear and determine a case on the record as filed, and may not consider documents attached as exhibits to briefs." *See, e.g.*, *Markowitz v. Markowitz*, 118 S.W.3d 82, 87 & n.1 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). We therefore do not consider this material, and instead rely on the appellate record.

4

Because the appellate record shows that Henry neither objected to the allegedly late service nor asked the court to strike Sullivan's response, he has waived any complaint as to untimely service. *See* TEX. R. APP. P. 33.1(a).

### 3. *Reason Three: The trial judge did not read the response.*

Although Henry admits that Sullivan handed the trial court a copy of her response at the hearing on the plea to the jurisdiction, he asserts that the trial judge did not read it, and thus, the response should be struck from the record. He cites no authority for this unwarranted proposition. *But see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) ("[W]e consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is *required* to do." (emphasis added)); *Desai v. Chambers Cnty. Appraisal Dist.*, 376 S.W.3d 295, 300 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[T]his court may review[] the evidence attached in response to the pleas to the jurisdiction . . . .").

We deny the portion of Henry's motion in which he asks us to strike Sullivan's response from the appellate record and to strike the portions of her brief relying on that response.

## B. Authorities Included in the Appendix to Sullivan's Brief

In the second portion of the motion to strike, Henry asks that we strike from the appendix to Sullivan's brief material that is not included in the clerk's record, and that we strike the portions of Sullivan's brief in which she cites that material. The only items in the appendix that are not part of the clerk's record are copies of a Texas Attorney General opinion and a concurring opinion in another case. *See* Tex. Att'y Gen. Op. GA-0105 (2003); *In re Henry*, No. 01-14-00820-CV, 2015 WL 1735368 (Tex. App.—Houston [1st Dist.] Apr. 14, 2015, orig. proceeding

[mand. denied]) (Massengale, J., concurring in denial of reconsideration en banc). Such authority properly may be included in the appendix to a party's brief. *See* TEX. R. APP. P. 38.1(k)(2) (the appendix to an appellant's brief may contain copies or excerpts of court opinions and similar material); *see also Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 598 n.6 (Tex. 1975) (orig. proceeding) (explaining that opinions of attorneys general, "while not binding on the judiciary, are persuasive and are entitled to consideration").

Because there are no grounds to strike any of this material, we deny the motion.

## II. PLEA TO THE JURISDICTION

A defendant seeking dismissal of a case for want of jurisdiction may file a plea to the jurisdiction challenging the plaintiff's pleadings or challenging the existence of jurisdictional facts. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). Where, as here, a plea to the jurisdiction challenges the plaintiff's pleadings, we determine whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226. This is a question of law which we review de novo. *Id.* To determine whether the plaintiff has met this burden, we liberally construe the pleadings, taking all factual assertions as true and looking to the pleader's intent. *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015) (per curiam).

Sullivan asserted in her pleadings that the district court has jurisdiction over her suit pursuant to Article V, Section 8 of the Texas Constitution, which provides that "[t]he District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." TEX. CONST. art. V, § 8. The

6

enabling legislation repeats this language,[2] and with a few exceptions inapplicable here, the legislature has not specified how this jurisdiction is exercised or even invoked. *See Comm'rs Court v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997). As a result, the scope of the district court's supervisory jurisdiction generally has been defined by case law. *Id.* at 80.

To decide whether the trial court erred in denying Henry's plea to the jurisdiction, we will begin by identifying Sullivan's allegations. We will then address the parties' arguments about whether, under the relevant case law, these allegations are sufficient to invoke the district court's jurisdiction over the suit as pleaded.

## A. Sullivan's Pleadings

As context for her claims, Sullivan states in her pleadings that fifteen years ago, the presiding judge over all of the state's statutory probate courts issued Administrative Order 2001-11, under which Sullivan is required to act as the county's local administrative statutory probate court judge. She represents that the local administrative judge for each of three types of courts in the county historically has been paid an annual "judicial administrative fee" or "administrative salary" of $5,000. She states that this amount is paid to the local administrative district court judge and the local administrative county court at law judge from the county's general fund, but the fee to the local administrative statutory probate court judge is paid from a dedicated "contributions fund" created from the filing fees in probate cases. Sullivan further explains that she submits to the commissioners court an annual budget that includes the fee payment from the contributions fund. She contends that she submits the budget as a matter of public disclosure, and not for the commissioners court's approval. According to Sullivan, the commissioners

---

[2] *See* TEX. GOV'T CODE ANN. § 24.020 (West 2004).

court has no jurisdiction over the contributions fund from which the administrative fee is paid; no jurisdiction over the administrative-fee portion of her budget; and no discretion to approve or disapprove the payment.

Despite the history of paying a $5,000 administrative fee to all three local administrative judges, Sullivan alleges that Henry voted in September 2014 to continue paying the fee from the county's general fund to the local administrative judges for the district and county courts at law, but to eliminate the payment to Sullivan—even though her fee was paid from the county's "contributions fund," which can be used only "for court-related purposes for the support of the statutory probate courts in the county."[3]  She characterizes this vote both as "arbitrary and capricious" and as an impermissible effort to exercise authority regarding the contributions fund, over which Henry has no jurisdiction.  She contends that she was damaged in the fiscal year beginning October 1, 2014 and ending September 30, 2015 by losing $5,000 of earnings and related benefits, and that for as long as she remains in office, she will be similarly damaged in each fiscal year that payment is denied.

She seeks declaratory judgment (1) construing the statutory rights and obligations of the parties under Section 51.704 of the Texas Government Code, which provides in part that "the clerk of a statutory probate court shall collect a $40 filing fee in each probate, guardianship, mental health, or civil case filed in the court to be used for court-related purposes for the support of the judiciary";[4] (2) determining whether the commissioners court has jurisdiction over the

_____

[3] *See* TEX. GOV'T CODE ANN. § 25.00213(b).

[4] *See id.* § 51.704(a) (West 2013).  The fees are sent to the comptroller for deposit in the state judicial fund.  *Id.* § 51.704(c).  From the judicial fund, the state annually pays into the county's contributions fund $40,000 per statutory probate court judge in the county.  *Id.* § 25.00211 (West 2004).

8

contributions fund created from those filing fees;[5] and (3) ruling that she is entitled to payment of the administrative fee from the contributions fund in accordance with the budget she submitted. She also asks the district court to issue a writ of mandamus directing Henry to reinstate the administrative fee. Finally, she asks for judgment against Henry for her actual damages, and recovery of her costs and attorney's fees under the Uniform Declaratory Judgments Act.[6]

In sum, Sullivan alleges both that Henry exercised control regarding a fund over which he had no jurisdiction, and that he acted arbitrarily and capriciously in voting to eliminate the $5,000 administrative fee paid to one local administrative judge from that fund while continuing to pay administrative fees to two other local administrative judges from the county's general fund. She seeks declaratory relief, recovery of damages sustained in the past, and the issuance of a writ of mandamus to prevent future damages.

To determine whether these allegations are sufficient to invoke the district court's jurisdiction, we turn to the governing case law.

## B.     The District Court's Jurisdiction Over the Commissioners Court

The district court may exercise general supervisory control when the commissioners court (1) fails to perform a mandatory act; (2) performs an unauthorized act; or (3) abuses its discretion while undertaking an act it is authorized to perform.

First, if the commissioners court fails to perform a clear statutory duty, the district court may mandate that it do so. *See Vondy v. Comm'rs Court*, 620 S.W.2d 104, 108–09 (Tex. 1981) ("*Vondy I*") (holding that where the commissioners court

---

[5] *See id.* § 25.0213.

[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015).

9

failed to comply with a state constitutional provision mandating that it compensate constables on a salary basis, the district court should have exercised its general supervisory jurisdiction to grant the constable's request for mandamus relief).

Second, the district court also has jurisdiction over claims in which it is alleged that the commissioners court acted illegally or exceeded its authority, or that the challenged act is otherwise invalid. *See, e.g.*, *J. R. Phillips Inv. Co. v. Rd. Dist. No. 18*, 172 S.W.2d 707, 712 (Tex. Civ. App.—Waco 1943, writ ref'd) (explaining that the district court had jurisdiction under Article V Section 8 over taxpayers' suit for declaratory and injunctive relief to prevent the commissioners court from illegally paying funds under a contract alleged to be void); *Stovall v. Shivers*, 129 Tex. 256, 260–61, 103 S.W.2d 363, 365–66 (1937) ("If the order of the commissioners court . . . be invalid, then there can be no question of the right of the district court under section 8 of article 5 of the Constitution . . . to review same and prevent its enforcement."); *Mobil Oil Corp. v. Matagorda Cnty. Drainage Dist. No. 3*, 580 S.W.2d 634, 639 (Tex. Civ. App.—Corpus Christi 1979) ("*Mobil I*") (holding that the district court had jurisdiction under Article V Section 8 over a complaint that the commissioners court's annexation of offshore property "was void because it lacked jurisdiction, because its action was arbitrary and because it was not supported by substantial evidence"), *rev'd on other grounds*, 597 S.W.2d 910, 910 (Tex. 1980) ("*Mobil II*") (rendering judgment that the annexation "was in excess of the commissioners' statutory powers").

Third, when the commissioners court performs an act that is entrusted to its discretion, the district court has jurisdiction to determine whether the commissioners court abused that discretion. *See Vondy I*, 620 S.W.2d at 109.[7]

---

[7] Only exercises of absolute discretion—"discretion where no specific, substantive or objective standards govern the exercise of judgment"—are absolutely protected by governmental immunity. *See Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161, 163

10

This basis for jurisdiction can be invoked by allegations that the commissioners court's decision is arbitrary, capricious, or unsupported by substantial evidence. *See Vondy v. Comm'rs Court*, 714 S.W.2d 417, 420 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) ("*Vondy II*"), *quoted with approval in Ector County v. Stringer*, 843 S.W.2d 477, 479 n.2 (Tex. 1992).

## C. Sullivan Invoked the District Court's Supervisory Jurisdiction

Sullivan alleges that Henry (1) has neither jurisdiction nor discretion to approve or disapprove of her proposed expenditure of $5,000 from the contributions fund as compensation for her services as the local administrative statutory probate court judge, or (2) abused his discretion by arbitrarily and capriciously enacting the 2014–2015 budget eliminating that compensation. Thus, she alleges that Henry exercised authority he did not possess or abused whatever discretion he had in exercising authority he did possess. [8] We need not consider whether Sullivan's allegations that Henry exceeded his authority were sufficient to invoke the trial court's supervisory jurisdiction, because her allegation that Henry abused his discretion is itself sufficient to do so. *See Stringer*, 843 S.W.2d at 479 & n.2; *Tarrant County v. Shannon*, 129 Tex. 264, 274, 104 S.W.2d 4, 9 (1937).

We turn now to Henry's arguments to the contrary.

### 1. Henry's Statutory Arguments

In arguing that the trial court erred in denying his plea to the jurisdiction, Henry first points out that no statute requires payment of an administrative fee to

---

(Tex. 2016). The commissioners court does not have absolute discretion in its budgetary decisions. *See* TEX. LOC. GOV'T CODE ANN. § 111.068 (West 2015).

[8] These characterizations of Henry's actions are mutually exclusive: either he had authority and discretion to make the challenged decisions, or he did not. We therefore look to Sullivan's intent, and treat these as alternative allegations. *See Miranda*, 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

the local administrative statutory probate court judge. He acknowledges, however, that Sullivan does not allege that a statute requires that she be paid an administrative fee from the contributions fund. And, as we have seen, the district court's supervisory jurisdiction is not limited to those claims in which it is alleged that the commissioners court failed to perform a constitutional or statutory duty. Thus, this argument does not defeat jurisdiction.

Henry similarly contends that under Texas Government Code section 25.00213(b), the only personnel who are statutorily authorized to receive compensation from the contributions fund are certain associate probate court judges. *See* TEX. GOV'T CODE ANN. § 25.00213(b) (specifying that money in the contributions fund "may be used only for court-related purposes for the support of the statutory probate courts in the county, including for the payment of the compensation of a statutory probate court associate judge"). Nevertheless, Henry has not challenged Sullivan's factual allegation that she historically has been paid the administrative fee from the contributions fund. Sullivan disagrees with Henry's 2014 interpretation of the statute. She contends that compensating her for her services as the local administrative statutory probate court judge continues to be a "court-related purpose[] for the support of the statutory probate courts in the county." The trial court has jurisdiction to determine whether the parties' historical interpretation of the statute or Henry's current interpretation is correct.

### 2. *Henry's Semantic Argument*

Although Sullivan alleges that Henry "arbitrarily and capriciously" voted to reduce her annual compensation by $5,000, Henry contends that she failed to invoke the district court's supervisory jurisdiction because she did not allege that Henry's action was (a) "so clearly arbitrary or unreasonable, or based upon so gross and prejudicial an error of law, as to constitute a flagrant abuse of

discretion"; (b) a "clear" or "gross" abuse of discretion; or (c) "clearly or grossly arbitrary."

This argument is not persuasive. Sullivan was not required to use specific modifiers when alleging that Henry abused his discretion. *See Vondy II*, 714 S.W.2d at 420 ("[T]his supervisory jurisdiction can be invoked in a direct attack in the district court when it is alleged that the Commissioners Court order is voidable as being arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction." (quoting *Mobil I*, 580 S.W.2d at 638)); *Stringer*, 843 S.W.2d at 479 ("Once the commissioners court acts, the district court may review the commissioners' orders to determine if they are arbitrary, or otherwise constitute an abuse of discretion."). Even if modifiers were required, then Henry still would not be entitled to dismissal with prejudice, because Sullivan would be entitled to amend her pleadings on remand. *See Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007) ("If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead.").[9]

### 3. Henry's Immunity Arguments

Henry additionally argues that the trial court erred in denying his plea to the jurisdiction because he is entitled to governmental and legislative immunity. We conclude that each type of immunity was waived. Because our reason for this

---

[9] As part of the same argument, Henry asserts without elaboration that Sullivan's suit is "a collateral attack of [the] Commissioners Court's statutory jurisdiction to set her salary." As a matter of long-settled law, however, a case such as this not a "collateral attack"; it is an equitable proceeding in which the commissioners court's action is directly attacked. *See, e.g.*, *Mobil II*, 597 S.W.2d at 911–12; *Scott v. Graham*, 156 Tex. 97, 102–03, 292 S.W.2d 324, 328 (1956); *J.R. Phillips Inv. Co.*, 172 S.W.2d at 712; *Haverbekken v. Hale*, 109 Tex. 106, 113–14, 204 S.W. 1162, 1165 (1918).

conclusion is the same for both governmental and legislative immunity, we will briefly describe each type of immunity before addressing them together.

### (a)  Governmental Immunity

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Sovereign immunity encompasses both immunity from suit and immunity from liability. *Miranda*, 133 S.W.3d at 224. Absent waiver, political subdivisions of the state are entitled to the same immunity, which is then referred to as governmental immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). When sued in his official capacity for conduct within his scope of authority, an official generally has the same governmental immunity as his employer. *See Franka v. Valasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). Thus, unless waived, an official sued in his official capacity usually has governmental immunity from suit and from liability. Henry contends that the trial court erred in denying his plea to the jurisdiction because Sullivan did not and cannot allege a valid waiver of governmental immunity.[10]

### (b)  Legislative Immunity

Under the doctrine of legislative immunity, "individuals acting in a legislative capacity are immune from liability for those actions." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). The commissioners court's "powers and duties 'include aspects of legislative, executive, administrative, and judicial functions.'" *Harris County v. Nagel*, 349 S.W.3d 769, 794 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (quoting *Agan*, 940 S.W.2d at 79). In

---

[10] *But see Hous. Belt & Terminal Ry. Co.*, 487 S.W.3d at 158 n.1 (clarifying that the *ultra vires* doctrine is not an exception to governmental immunity because "when a governmental officer is sued for allegedly *ultra vires* acts, governmental immunity does not apply from the outset").

creating the county budget, the members of the commissioners court perform a legislative function. *Id.* Because Sullivan's claims arise from Henry's actions in eliminating part of Sullivan's compensation from the budget, Henry argues that he is entitled to legislative immunity from suit. Courts have offered varying opinions about the scope of legislative immunity,[11] but for the purpose of this suit, we may assume, without deciding, that legislative immunity can provide immunity from suit to an individual sued in his official capacity for legislative activities within the scope of his authority.

---

[11] Our sister court recently interpreted legislative immunity narrowly. *See Henry v. Cox*, 483 S.W.3d 119, 149–50 (Tex. App.—Houston [1st Dist.] Dec. 22, 2015, pet. pending). In that case, County Judge Mark Henry was sued by District Court Judge Lonnie Cox for Judge Henry's acts, as a member of the commissioners court, in terminating the employment of the county's director of judicial administration, creating a new position, and setting the salary for the new position. *See id.* at 149. The First Court of Appeals stated that "[l]egislative immunity protects individuals from 'personal liability' for actions performed in their legislative capacity." *Id.* (citing *In re Perry*, 60 S.W.3d 857, 859 (Tex. 2001) (orig. proceeding)). The court then reasoned that legislative immunity did not bar Judge Cox's suit because, *inter alia*, (a) Judge Henry was sued in his official capacity rather than his personal capacity, and (b) immunity from liability did not affect the district court's jurisdiction to hear the case. *Id.* at 149–50. Thus, our sister court appears to have treated legislative immunity solely as immunity from personal liability for an official's performance of legislative functions.

Other courts have interpreted the doctrine of legislative immunity more broadly. The United States Supreme Court has held that, at least in some contexts, legislative immunity can confer immunity from suit. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49, 118 S. Ct. 966, 970, 140 L. Ed. 2d 79 (1998) ("[W]e now hold that local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities."); *see also Hays County v. Hays Cnty. Water Planning P'ship*, 106 S.W.3d 349, 359 (Tex. App.—Austin 2003, no pet.) ("The purpose of legislative immunity is to prevent lawsuits from interfering with the legislative process."). Further, the Court has applied the doctrine not only when the defendant is sued in an individual capacity, but also when the defendant is sued in an official capacity. *See Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 737–38, 100 S. Ct. 1967, 1977–78, 64 L. Ed. 2d 641 (1980) (holding that, although a federal statute authorized the recovery of attorney's fees "from state officials sued in their official capacities," the trial court erred in assessing attorney's fees against the state supreme court and its chief justice based on acts for which they enjoyed legislative immunity).

### (c) Waiver

Although governmental and legislative immunity are different, each is rooted in the same separation-of-powers tenets. *See, e.g.*, *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (governmental immunity); *In re Perry*, 60 S.W.3d 857, 859 (Tex. 2001) (orig. proceeding) (legislative immunity). The Texas Constitution expressly provides for exceptions to the general rule that no member of one branch of government shall exercise a power properly attached to another branch of government. *See* TEX. CONST. art. II, § 1. The power conferred on district courts to exercise general supervisory control over the commissioners court is such an exception. *See id.* art. V § 8; *Hooten v. Enriquez*, 863 S.W.2d 522, 528 (Tex. App.—El Paso 1993, no writ); *Comm'rs Court v. Ross*, 809 S.W.2d 754, 757 (Tex. App.—Tyler 1991, no writ).

We therefore disagree with Henry's contention that Sullivan failed to allege facts affirmatively showing waiver of immunity from suit. Sullivan sufficiently invoked the district court's supervisory jurisdiction under Article V Section 8 of the Texas Constitution, and this provision must be read as a waiver of immunity from suit for such claims. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (explaining that waiver of immunity from suit may be found in a constitutional provision). To hold otherwise would be to render the provision meaningless. *See id.* at 697 ("[W]e have found waiver when the provision in question would be rendered meaningless unless immunity were waived." (citing *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8 (Tex. 2000))); *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) ("We strive to give constitutional provisions the effect their makers and adopters intended. We avoid a construction that renders any provision meaningless or inoperative." (citations omitted)).

16

### (d)  Immunity from Liability for Monetary Damages

In a single sentence in his brief, Henry also states that Sullivan's "pleadings further contain no allegations that her actions for monetary damages are the subject of any waiver of sovereign or governmental immunity." Henry did not distinguish between past and future damages, but in her response brief, Sullivan did.

Sullivan points out that governmental immunity generally bars claims for monetary relief, but that governmental immunity does not apply to an "official who has acted without legal or statutory authority." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009). And as previously discussed, Sullivan has alleged that Henry acted without legal authority. She acknowledges that under *Heinrich*, a plaintiff who proves such an *ultra vires* claim is entitled to prospective relief—which may entail payment of money—but is not entitled to retrospective monetary relief. *See id.* at 376–77.[12] Although she seeks monetary relief for each fiscal year in which Henry denies payment of the administrative fee, she argues that this is a request only for prospective relief, because the first fiscal year in which payment was denied has not yet ended.

When Sullivan made that argument in her opening brief, it was true that Galveston County's 2014–2015 fiscal year had not yet ended; however, that fiscal year ended on September 30, 2015—the day before this case was argued and submitted. Thus, some of the prospective monetary relief she requested in the trial court is now retrospective monetary relief that is barred by governmental

---

[12] Henry points out that Sullivan did not request injunctive relief in the trial court, and implies that a claimant can obtain prospective monetary relief only through an injunction. This is incorrect. The Texas Supreme Court has identified a suit for declaratory relief as another means of establishing a right to prospective monetary relief. *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015) ("AT & T is entitled to declaratory relief that payment of its relocation expenses by the District is required by § 49.223. Although that declaration essentially is a requirement for prospective relief against the District, the District's immunity does not shield it from such relief.").

immunity.[13]  We therefore modify the trial court's ruling to grant Henry's plea to the jurisdiction only as to Sullivan's claims for monetary relief for a fiscal year that has ended.

### III. CONCLUSION

When the trial court denied Henry's plea to the jurisdiction, the ruling was correct.  Since then, however, some of Sullivan's claims for prospective monetary relief have become claims for retrospective monetary relief that are barred by governmental immunity.  We therefore modify the trial court's ruling to grant Henry's plea to the jurisdiction only as to Sullivan's claims for monetary relief for any county fiscal year that ended on or before September 30, 2015; affirm the trial court's order as modified; and remand the case for further proceedings.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Boyce, Christopher, and Busby.

---

[13] *See Heinrich*, 284 S.W.3d at 376 ("[A] claimant who successfully proves an *ultra vires* claim is entitled to prospective injunctive relief, as measured from the date of injunction." (citing *Edelman v. Jordan*, 415 U.S. 651, 669 (1974) (using entry of injunction to distinguish retrospective from prospective relief))); *accord*, *Lowell v. City of Baytown*, 356 S.W.3d 499, 501 (Tex. 2011) (per curiam).