

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00378-CV

———————————————

WISE COUNTY, TEXAS; COMMISSIONERS COURT OF WISE COUNTY, TEXAS; AND DANNY WHITE, COUNTY COMMISSIONER, PRECINCT ONE, WISE COUNTY, TEXAS, Appellants

V.

KATHERINE MASTROPIERO, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV18-06-475

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

In 2018, appellee Katherine Mastropiero sued appellants Wise County, the Commissioners Court of Wise County, and Commissioner Danny White, seeking to compel them to maintain certain roads in her subdivision. Appellants filed a plea to the jurisdiction, which was denied. Appellants have appealed the denial.

This appeal presents the question of whether the trial court may exercise jurisdiction under article V of the Texas constitution, which provides district courts with "appellate jurisdiction and general supervisory control" over a commissioners court that has failed to perform a clear duty or otherwise abused its discretion. Tex. Const. art. V, § 8. We conclude that Mastropiero's petition and evidence—which concern appellants' alleged dereliction of their duty to maintain public roads—establish the trial court's jurisdiction under article V. We therefore affirm.

## I.    BACKGROUND

Mastropiero's live petition alleged that in March of 2000, Prairie View Enterprises ("the developer") began to develop Prairie View Estates, a subdivision in Wise County. Her action concerns Phase Two of the subdivision, the only portion with roads that the county has refused to maintain. The developer presented its "Phase Two Final Plat" for the subdivision to the county commissioners court. The plat described several roads and stated that the roads were "dedicate[d] to the public." Mastropiero alleged that the owners, residents, and members of the public have used the roads continuously ever since.

According to her petition, the county sent an engineer to conduct a final inspection of the roads in August 2000. The engineer then sent a letter of compliance to the commissioners court, certifying that the developer had completed all "infrastructure improvements"—including the roads—according to county specifications.

Mastropiero alleged that on August 28, 2000, the commissioners court held a meeting at which it approved the final plat for Phase Two. The minutes of the meeting stated the commissioners court had unanimously adopted a motion "to accept final construction of Prairie View Estates Phase Two . . . based on the letter of compliance" issued by the engineer. The final plat was then endorsed and filed in the county's records; Mastropiero submitted a copy of the county's rules which showed that filing the plat was the step after the county "accepts improvements." Mastropiero reasoned that Phase Two and its dedicated public roads were therefore finally accepted as county roads, requiring the county to repair and maintain the roads. But Mastropiero alleged that the county has not subsequently maintained the roads.

Mastropiero alleged that consistent with that acceptance of the roads, no further action of the developer was required, and none was demanded by the commissioners court. Mastropiero claimed that the county therefore waived any other requirements, such as the county rule that required the developer to submit a maintenance bond to underwrite the cost of repairs for the first two years after the roads were accepted. It

3

was undisputed that the developer did not submit a maintenance bond complying with this rule.

In her suit, Mastropiero argued that appellants neglected their duty to maintain the roads and that Commissioner White in particular, as the supervisor of roads in her precinct, had neglected his duty to supervise and report on the roads. She sought declaratory relief in multiple forms, including declarations that the roads were entitled to county maintenance and that the maintenance bond requirement was invalid or waived, among others.

Appellants filed a plea to the jurisdiction. After a hearing, the trial court denied appellants' plea and entered findings of fact and conclusions of law. Appellants filed this accelerated interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

## II. DISCUSSION

In their first issue, appellants argue that the declaratory judgments act does not provide the trial court with jurisdiction over Mastropiero's claims. In their second issue, appellants contend that Mastropiero cannot avail herself of jurisdiction under article V, section 8 of the Texas constitution, which provides that the district court has supervisory jurisdiction to review certain actions of the county commissioners court. Appellants assert that with the only two potential sources of jurisdiction eliminated, the trial court erred by denying their plea to the jurisdiction.

## A. Standard of Review

Analysis of whether jurisdiction exists begins with the plaintiff's live pleadings. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*

A party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings. *Id.* at 227. The trial court's review of the evidence generally mirrors the summary judgment standard. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* This is a question of law that we review de novo. *Id.*[1]

---

[1] In its findings, the court restated some of the unchallenged factual content of Mastropiero's pleadings and set out several principles and conclusions of law related to the pleadings. To the extent that the findings reproduce the unchallenged factual content of Mastropiero's pleadings, we already take this content as true under our standard of review, and thus any examination of these findings would simply duplicate our discussion of Mastropiero's pleadings. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To the extent that the findings actually set out principles and conclusions of law, the trial court's label is not controlling on appeal. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 n.7 (Tex. 2019). We therefore conduct a de novo review and reach our own conclusions regardless of these "findings."

## B.     Jurisdiction as to the Commissioners Court

We first take up appellants' arguments concerning jurisdiction under article V, section 8 of the Texas constitution. Mastropiero asserts that the district court properly exercised supervisory jurisdiction over the commissioners court based on this provision. Article V, section 8 vests district courts with "appellate jurisdiction and general supervisory control" over the commissioners courts, by which the district courts can mandate the performance of a ministerial or nondiscretionary statutory duty. *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017). The judiciary's right of supervision over a commissioners court is not boundless, though. *Id.* at 37. A district court can set aside decisions or actions of the commissioners court that are illegal, unreasonable, or arbitrary—but there the power of the district court ends. *Id.*

Thus, the district court may exercise general supervisory control over a commissioners court in only three instances. *Henry v. Sullivan*, 499 S.W.3d 545, 553 (Tex. App.—Houston [14th Dist.] 2016, pets. denied) (op. on reh'g). First, if the commissioners court fails to perform a clear statutory duty, the district court may mandate that it do so. *Id.* Second, the district court also has jurisdiction over claims in which it is alleged that the commissioners court acted illegally or exceeded its authority, or that the challenged act is otherwise invalid. *Id.* Third, when the commissioners court

---

*City of Austin v. Whittington*, 384 S.W.3d 766, 788 (Tex. 2012). The same holds true as to the trial court's bona fide conclusions of law. *See id.*

performs an act that is entrusted to its discretion, the district court has jurisdiction to determine whether the commissioners court abused that discretion. *Id.*

In this case, Mastropiero has alleged that the commissioners court failed to perform a clear statutory duty. Mastropiero alleges that the developer of her subdivision dedicated its roads to public use and that the commissioners court accepted that dedication. Mastropiero argues that the accepted dedication created a duty to maintain the roads, which the county did not fulfill.

As we understand their argument, appellants contend that Mastropiero has not sufficiently alleged that the commissioners court accepted the dedication. Appellants contend that she has therefore failed to establish the predicate for her article V claim: if the county commissioners court never accepted the dedication, it had no duty to maintain the roads.

Dedication is an act of appropriating private land to the public for any general or public use. *Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 906 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Miller v. Elliott*, 94 S.W.3d 38, 44 (Tex. App.—Tyler 2002, pet. denied). A dedication may be either express or implied. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978); *Haven Chapel*, 496 S.W.3d at 906. Implied dedication requires a clear intention on the landowner's behalf to appropriate the land to the public's use, along with an acceptance by the public or local authorities. *Whitehead v. Mackenzie*, No. 02-09-00383-CV, 2011 WL 2755349, at *3 (Tex. App.—Fort Worth July 14, 2011, pet. denied) (mem. op.); *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—

7

San Antonio 2001, no pet.).  The essential elements of a completed dedication are (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.  *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984); *Kunefke v. Calhoun Cty.*, No. 13-05-006-CV, 2006 WL 1553261, at *2 (Tex. App.—Corpus Christi–Edinburg June 8, 2006, no pet.) (mem. op.).  Defendants have challenged Mastropiero's case on the fourth element.

According to Mastropiero's petition, the developer stated in its plat that it "dedicate[d] to the public the rights-of-way and easements as shown on the plat." Appellants do not dispute this fact.  Other courts have found similar plat provisions to be offers of dedication.  *See Kunefke*, 2006 WL 1553261, at *2; *Stein*, 53 S.W.3d at 42; *Comm'rs' Ct. v. Frank Jester Dev. Co.*, 199 S.W.2d 1004, 1007 (Tex. App.—Dallas 1947, writ ref'd n.r.e.).

However, recording a map or plat showing streets or roadways does not, standing alone, constitute a completed dedication as a matter of law.  *Haven Chapel*, 496 S.W.3d at 906; *Miller*, 94 S.W.3d at 45.  A plat's statement of dedication is a mere offer, and the filing of the plat does not constitute an acceptance of the dedication.  *Miller*, 94 S.W.3d at 45; *Stein*, 53 S.W.3d at 41.

"The formal acceptance of the dedication of a roadway by a governmental entity is relatively easy to determine because it is done by action of that governmental entity

8

and monumented by such things as minutes of meetings." *Lambright v. Trahan*, 322 S.W.3d 424, 432 (Tex. App.—Texarkana 2010, pet. denied). But acceptance does not require a formal act; implied acceptance is also sufficient. *Viscardi*, 576 S.W.2d at 19; *Lambright*, 322 S.W.3d at 432. Implied acceptance "has no such bright line determinative act." *Lambright*, 322 S.W.3d at 432. One method of implied acceptance is through use of the roads by the public or local authorities. *Stewart v. Angelina Cty.*, No. 12-06-00124-CV, 2007 WL 677865, at *3 (Tex. App.—Tyler Mar. 7, 2007, pet. denied) (mem. op.); *Miller*, 94 S.W.3d at 45; *Stein*, 53 S.W.3d at 42.

Mastropiero alleged that the commissioners court accepted the dedication both expressly and impliedly. First, Mastropiero reasoned that there was an express acceptance of the dedication. Formal acceptance is commonly shown through "minutes of meetings," and Mastropiero alleged and submitted meeting minutes showing that the commissioners "unanimously adopted" a motion "to accept final construction" of the roads. *See Lambright*, 322 S.W.3d at 432.

According to Mastropiero, the county's own rules confirm that the commissioners court expressly accepted the dedication. The county's rules[2] provided a flow chart for subdivision development, which showed, in part, as follows:

---

[2]Mastropiero attached a copy of the rules to her response to the plea to the jurisdiction.

9



First, the county engineer was to recommend acceptance of improvements to the commissioners court. Mastropiero alleged and submitted evidence that the county's engineer had inspected the roads, found them up to the county's specifications, and issued a letter of compliance to the commissioners court. Second, the contractor was to provide a maintenance surety, and it is undisputed that the developer of Mastropiero's subdivision did not do so. Nonetheless, third, the county was to "accept[] Improvements"; Mastropiero alleged and submitted meeting minutes showing that the commissioners "accept[ed] final construction" of the development, including its roads, with no mention of a maintenance bond. Fourth, according to the flow chart, the final plat was to be filed with the county clerk. Mastropiero alleged the final plat was recorded in the county's records, and she confirmed this fact with evidence showing a file-stamped plat. The county's rules suggest that the filing of the plat was the final step after a completed acceptance, and the meeting minutes themselves appear to formally accept the construction of the roads. Thus, Mastropiero has sufficiently

10

alleged—and introduced evidence suggesting—an express acceptance of the dedication. *See Tarrant Reg'l*, 572 S.W.3d at 664.

However, appellants dispute Mastropiero's claim that the commissioners court expressly accepted the dedication. First, appellants contend that acceptance of the roads' construction is not the same thing as formally accepting the roads' dedication. As support, they offer only their own characterization of Mastropiero's pleaded facts. When the commissioners court voted to accept final construction, appellants say, the court merely indicated that the work was of "sufficient quality that [the developer could] stop working." To appellants, acceptance into the county road system would require something more.

In our opinion, this argument does not eliminate any fact issue as to whether the commissioners court expressly accepted the dedication. *See id.* Appellants ask us to accept their characterization of the undisputed facts, construing them in the light least favorable to Mastropiero, but this runs counter to our standard of review. *See Miranda*, 133 S.W.3d at 226. Moreover, the determination of whether a dedication has been accepted is a question of fact. *See Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex. 1985). Appellants' characterization would not preclude the factfinder from rationally concluding that the commissioners court, by "accept[ing]" the roads, expressly accepted the dedication.

As we read their brief, appellants also contend that the roads were not expressly accepted because the developer failed to comply with a precondition for acceptance:

11

the maintenance bond requirement. Appellants point out that county rules required the developer to submit a maintenance bond, whereby the developer would pay for the first two years of the road maintenance. Appellants observe that when the county's engineer submitted his letter of compliance, he stated, "Prior to acceptance of the improvements, the developer is required to issue surety for maintenance to the County in an amount equal to the total cost of the improvements for a period of two years." The developer did not submit such a maintenance bond. Appellants thus argue that any acceptance was conditioned on the developer's compliance with the maintenance bond requirement, and because the developer did not subsequently submit a bond, there was effectively no acceptance.

However, the meeting minutes do not mention any caveat that conditioned acceptance on the future submission of a maintenance bond. Instead, the commissioners court appears to have unreservedly accepted the construction without mention of a maintenance bond. Mastropiero reasonably alleges that the commissioners court therefore waived any bond precondition by accepting the construction without a bond.

Further, to the extent that appellants argue that the maintenance bond was a precondition, this argument is undercut by the language of the county's rules. Courts interpret municipal ordinances using principles of statutory construction, and we see no reason not to apply the same principles to construe the county's rules. *See Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). We interpret

unambiguous rules according to their plain language unless that interpretation leads to absurd results. *See State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 270 (Tex. 2017); *City of San Antonio v. Headwaters Coal., Inc.*, 381 S.W.3d 543, 551 (Tex. App.—San Antonio 2012, pet. denied) (applying these principles to interpret a bond requirement).

The county's rules show that the maintenance bond requirement is not a precondition for acceptance at all. According to the unambiguous language of the county rules, the bond requirement only comes into play after the commissioners court has already accepted the completed roads:

> *Upon* completion of said public improvements and *acceptance* by the County, the Developer, or the authorized agents thereof, shall be required to furnish to the County a good and sufficient Maintenance Bond approved by the County in an amount equal to the total cost of said improvements and guaranteeing their maintenance for the period of time set forth in this Section.

[Emphasis added.] Because the bond requirement is only triggered after acceptance has already occurred, the bond requirement is therefore no obstacle to acceptance of the dedication.[3]

---

[3]Finally, Mastropiero submits that the maintenance bond requirement is itself wholly invalid under several provisions of the transportation code and the Texas constitution. *See, e.g.*, Tex. Att'y Gen. Op. No. JM-262 (1984) (stating that the "county may not, in our opinion, employ" a maintenance bond requirement because it would contravene policy considerations and the limits of the enabling statute). Mastropiero contends that the maintenance bond, even if it was a precondition for acceptance, was entirely invalid. We need not pass on this argument, which goes to the merits of Mastropiero's complaint, because there is already a fact issue as to acceptance even without this argument.

In light of the language of the county's rules and Mastropiero's reasonable allegations concerning waiver, appellants have not shown that the bond requirement would frustrate an express acceptance of the dedication. We conclude that a fact issue remains as to whether the commissioners court expressly accepted the dedication. *See Tarrant Reg'l*, 572 S.W.3d at 664. We therefore need not consider Mastropiero's allegation that there was also an implied acceptance.[4]

Taking it as true that the commissioners court accepted the dedication, this would trigger a duty to maintain the roads. "The powers the Legislature confers on counties and commissioners courts are duties rather than privileges." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). The Legislature has delegated to the commissioners courts the authority, and thus the duty, to maintain "public roads" such as those dedicated and accepted by the commissioners court. *See* Tex. Transp. Code Ann. § 251.003(a); Tex. Att'y Gen. Op. No. GA-0594 (2008) ("By granting a

---

[4] "The Texas Legislature has abolished the theory of implied dedication in counties with a population of 50,000 or less." *Mitchell v. Ballard*, 420 S.W.3d 122, 130 (Tex. App.—Texarkana 2012, no pet.) (citing Tex. Transp. Code Ann. §§ 281.001, .003). In determining whether a theory of implied dedication is viable, courts have taken judicial notice of census data concerning population under rule of evidence 201. *See id.*; *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 504 (Tex. App.—Texarkana 2002, pet. denied); *see also City of Mesquite v. Moore*, 800 S.W.2d 617, 619 (Tex. App.—Dallas 1990, no writ) (holding that an appellate court may take judicial notice of census data "for the first time on appeal"). We take judicial notice that the 2000 census lists the population of Wise County as 48,793. *See* U.S. Census Bureau, Census 2000, American FactFinder, Geographic Comparison Table, https://factfinder.census.gov/bkmk/table/1.0/en/DEC/00_SF1/GCTPH1.CY10/0 500000US48497.

commissioners court this authority, the Legislature imposed on it a duty to make the roadways safe for public travel."). Once the dedication of public roads is complete through acceptance, the county has the obligation to maintain the roads. *See Buffington v. DeLeon*, 177 S.W.3d 205, 211 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Stein*, 53 S.W.3d at 43; Tex. Att'y Gen. Op. No. GA-0139 (2004) ("Dedication of streets and roads by a particular plat does not make them county roads, such that the county has an obligation to maintain them, unless the county accepts the dedication.").[5]

It is undisputed that the roads have not been maintained by the county. Thus, under the facts alleged by Mastropiero, the district court may exercise supervisory jurisdiction to ensure that the commissioners court fulfills its duty to maintain the roads. *See Henry*, 499 S.W.3d at 553. We conclude that Mastropiero affirmatively demonstrated a basis for the exercise of supervisory jurisdiction over the commissioners court.

Appellants assert that aside from article V jurisdiction, the declaratory judgments act does not provide jurisdiction for any of her declaratory claims against the commissioners court. However, Mastropiero's declaratory claims already fall under the aegis of the district court's supervisory jurisdiction, and there was no need for a further grant of jurisdiction from the declaratory judgments act. Generally, the declaratory

---

[5]*Cf. Kunefke v. Calhoun Cty.*, No. 13-05-006-CV, 2006 WL 1553261, at *3 (Tex. App.—Corpus Christi–Edinburg June 8, 2006, no pet.) (mem. op.) (reciting that a county accepted a dedication with the caveat that the roads would not be maintained as county roads until certain conditions were met, implying that an acceptance of dedication would otherwise obligate the county to maintain the roads).

judgments act does not alter a trial court's jurisdiction. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). Rather, the act is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Mastropiero's declaratory claims were within the district court's jurisdiction because the court's supervisory jurisdiction encompasses the substance of her declaratory claims. *See Camacho v. Samaniego*, 831 S.W.2d 804, 808 (Tex. 1992) (discussing district court's jurisdiction over a declaratory claim challenging commissioners court's bond requirement). This includes her requests for a declaration that the maintenance bond requirement is legally ineffective or that it is waived in this case; a declaration that the roads are part of the county's road system and are entitled to county maintenance; a declaration that the commissioners court must address the repair process; and a declaration that the commissioners court's refusal to maintain the roads is arbitrary, capricious, fraudulent, and the like. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444. Because Mastropiero already has a basis for jurisdiction to support these declaratory claims against the commissioners court, we conclude that the trial court did not err by denying the plea to the jurisdiction as to these claims. *See id.*

## C.    Jurisdiction as to Commissioner White

Next, appellants contend that the trial court erred in denying the plea to the jurisdiction as to Commissioner White. Appellants contend that article V of the Texas constitution makes no allowance for suits against individual commissioners; it only provides for the exercise of jurisdiction against the office of the commissioners court.

16

Appellants contend that the same article V jurisdiction therefore cannot extend to Mastropiero's suit against Commissioner White.

We are unpersuaded by appellants' argument, for we see little difference between Mastropiero's suit against Commissioner White and her suit against the commissioners court itself. A suit against a state official is merely another way of pleading an action against the entity of which the official is an agent. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 356 (Tex. 2013). Thus, a suit against a state official in his official capacity is not a suit against the official personally, for the real party in interest is the entity. *Id.* Such a suit actually seeks to impose liability against the governmental unit rather than on the individual specifically named and is, in all respects other than name, a suit against the entity. *Id.* Article V allows Mastropiero to sue the commissioners court, and her suit against Commissioner White is merely another means of expressing the same claim.

Moreover, appellants' argument is directly undercut by another line of precedent dating back to 1890. In *Gaal v. Townsend*, the Texas Supreme Court held that when a party seeks to compel a specific action or the performance of a certain duty, "all persons charged with the performance of that duty must be made parties defendant in the writ." 14 S.W. 365, 365 (Tex. 1890). Because the plaintiff sought to compel an action that could only be performed with the consent of the commissioners, the commissioners themselves were held to be necessary parties. *Id.* at 365–66. *Gaal* has been cited as good law as recently as 2017. *See Henry*, 520 S.W.3d at 34 (citing *Gaal*, 14 S.W. at 365).

17

Thus, Mastropiero was not only able to sue Commissioner White; in some circumstances, she could be required to sue Commissioner White.

Finally, Mastropiero has alleged that Commissioner White acted *ultra vires* by failing to perform his ministerial duty, as "road supervisor," to supervise and report on the roads. "A county commissioner serving as a road supervisor shall supervise the public roads in the commissioner's precinct at least once each month." Tex. Transp. Code Ann. § 251.004(b). Under the *ultra vires* exception, governmental immunity "does not bar a suit against a government officer" who is alleged to have "failed to perform a purely ministerial act." *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). Texas courts have held that road "maintenance activities are ministerial in nature." *McClure v. Reed*, 997 S.W.2d 753, 756 (Tex. App.—Tyler 1999, no pet.) (op. on reh'g) (citing *Siders v. State*, 970 S.W.2d 189, 192 (Tex. App.—Dallas 1998, pet. denied)); *see Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (noting that maintenance of public works is generally not discretionary); *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 562 (Tex. 2002) (Rodriguez, J., concurring) (recognizing that majority was impliedly holding that certain aspects of county road maintenance were ministerial). Mastropiero's pleadings are thus sufficient to raise an *ultra vires* claim against Commissioner White.

We therefore disagree with appellants' contention that Commissioner White was not a proper defendant. Mastropiero alleged that Commissioner White was the "road supervisor" for her precinct and had a ministerial duty to supervise the roads in

18

question. Mastropiero further seeks to compel the commissioners court to perform its alleged duty to maintain the roads. She was within her rights, then, to name as defendant a commissioner charged with executing those duties. The trial court did not err by denying the plea to the jurisdiction as to Commissioner White.

## D.    Jurisdiction as to the County

Lastly, appellants challenge the denial of the plea to the jurisdiction as to the county. Mastropiero sought a declaration that the county's maintenance bond requirement is invalid and unenforceable for multiple reasons.

In a single sentence of argument, appellants contend that this declaratory claim does "not go to the gravamen of the case" and "is a request for an improper advisory opinion from this court." Appellants continue, "As such, [we] will not brief that issue here."

True to their word, appellants do not offer any further argument concerning Mastropiero's claim against the county, nor any citations to the record or to legal authority. We therefore hold this complaint is inadequately briefed. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing); *In re C.H.*, No. 02-13-00312-CV, 2014 WL 3891636, at *2 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (applying this rule where party offered no legal authority and a single sentence of argument).

### III.   CONCLUSION

Having found no merit in appellants' arguments on appeal, we overrule appellants' issues and affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  August 8, 2019